Manuel Tous Soto, Plaintiff and Appellee, *v.* Municipality of Isabela, Defendant and Appellant.

No. 4436.   Argued December 19, 1928.—Decided December 12, 1929.

*O'Neill & O'Neill,* for appellant.   *M. Tous Soto,* for appellee.

Mr. Justice Texidor delivered the opinion of the court.

Plaintiff herein obtained a judgment against the defendant municipality for $5,000 as the reasonable value of certain professional services.   The municipality has taken an appeal and maintains that the district court erred in finding that the plaintiff requested and secured the services in question, and in holding that a contract for professional services existed between the parties.

It is stated by the district judge in his opinion that at a meeting between plaintiff and the mayor no mention was made of the amount of the fee or by whom it was to be paid.

The appellant urges us to infer from this that there was no meeting of the minds and, consequently, that there was no contract. Stress is also laid upon another contract previously entered into between the municipality and Alejandro Laborde Quintero, in regard to the negotiation of a loan for the municipality, by virtue of which contract Laborde under-took to furnish legal services in case of litigation. The appellant argues that it was not the municipality, but Laborde, who was liable for the services rendered.

The plaintiff had nothing to do with the contract between the municipality and Laborde and he heard nothing of that agreement until after judgment had been rendered in the action, in which the services involved herein were rendered, and approval had been made of the memorandum of costs and attorney's fees in that action. The plaintiff saw for the first time a copy of the contract in the possession of Laborde when the latter brought an action thereon against the municipality.

Laborde introduced the mayor to the plaintiff, and then withdrew. It has not been shown that Laborde was otherwise connected with the litigation, which gave rise to the present suit. It was the mayor whom plaintiff met first and who then and thenceforth represented the municipality in all its dealings with plaintiff, and who furnished all the data and information required for a defense of the action which was successfully conducted by the plaintiff. These and other facts outlined by the trial judges fully justify the first two conclusions, which are now assigned as grounds of appeal.

The lower court also held that the contract with Laborde did not include the obligation to furnish legal services in a proceeding of the sort to which the services rendered in this case are related and the value of which is sought to be recovered. Such finding is not assigned as error.

The third contention of appellant is that the services in question were not reasonably worth $5,000. In the action in which the services in question were rendered, the District

Court of Aguadilla approved a memorandum of costs and attorney's fees which included an item of $5,000 for attorney's fees. Apart from any question as to *res judicata* or *estoppel,* the action of the District Court of Aguadilla in allowing that item was entitled to some weight. In the case at bar there was some testimony as to the nature of the questions involved in that former litigation and as to the character and amount of the work performed by the attorney, plaintiff herein.

In his capacity as attorney for the municipality, plaintiff herein not only defeated the former action in the District Court of Aguadilla, but he also secured an affirmance of the decision, on appeal. The present action was instituted for the purpose of recovering the reasonable value of the services rendered in that appeal as well as in the court below. The value of the services rendered in that appeal could not be included in the memorandum of costs approved by the District Court of Aguadilla, nor allowed by that court. This circumstance, as well as the testimony above referred to, seem to have been overlooked by the district court in the present case. However, the trial judge did take into consideration the fact that the $5,000 allowed by the District Court of Aguadilla did not necessarily represent the total value of the services which were actually rendered in the district court. As indicated in its statement of the case and opinion, the reasonable value of such services constituted a maximum limit.

The amount which was actually allowed may have represented a conservative estimate of such value, or any portion thereof, in accordance with circumstances not connected in any manner with the question of value.

It is alleged in the fifth paragraph of the complaint in the present case that in the proceeding for the approval of the said memorandum of costs, the plaintiff herein, on behalf and for the benefit of the Municipality of Isabela, had submitted to the District Court of Aguadilla a memorandum con-

taining an item of $5,000 for attorney's fees, which was approved by an order of that court dated July 18, 1926, which is final and enforcible, by executory process. That averment has been admitted by the defendant herein. Aside from the situation in which the defendant, that is, the Municipality of Isabela, places itself by reason of such admission and by its own acts, we fail to see that the District Court of San Juan, in deciding the present case and bearing in mind the final award already mentioned, erred in fixing the compensation to be recovered herein in the same manner that the said award was made, with the acquiescence of the Municipality of Isabela. In view of these circumstances and the conditions of the present appeal, we do not think that the amount so fixed could properly be modified.

We are unable to find any abuse of discretion in the judgment appealed from, which must be affirmed.

The Chief Justice and Mr. Justice Hutchison dissented.

Mr. Chief Justice Del Toro, dissenting.

Manuel Tous Soto, a practicing attorney of this Island, sued the Municipality of Isabela to recover the sum of five thousand dollars, with interest thereon and costs. The defendant answered, the case went to trial, and the district court finally gave judgment for the plaintiff, for the $5,000 claimed.

The Municipality of Isabela thereupon took the present appeal, wherein it has assigned three errors, as follows:

"*First.* The court erred in holding that the fourth averment of the complaint had been proved, that is, that the Municipality of Isabela had requested and procured the services of the plaintiff attorney.

"*Second.* The court erred in holding that a contract for professional services existed between the Municipality of Isabela and attorney Manuel Tous Soto.

"*Third.* The court, even assuming that a contract of lease of services existed, erred in holding that the plaintiff had proved the sixth averment of his complaint, to wit, that the sum of FIVE THOUSAND

DOLLARS constituted an equitable, just and reasonable compensation for his services sought to be recovered."

The following is alleged in the complaint:

"Third. Towards the end of the year 1924, John Nuveen Company brought a suit in the District Court of Aguadilla, (Civil No. 5036), against the Board of Award and the Municipal Assembly of Isabela, wherein it was sought to annul the public sale, made on September 25, 1924, by the Board of Award of the Municipality of Isabela and approved and ratified some days thereafter by the Municipal Assembly of Isabela, of the bonds issued on January 1, 1924, by the Municipality of Isabela, for the purpose of obtaining a loan of ONE HUNDRED THOUSAND DOLLARS ($100,000), which had been approved by the Municipal Assembly and ratified by the Executive Council of Porto Rico.

"Fourth. In the said suit, the defendants Board of Award and Municipal Assembly of Isabela, represented by their respective presidents and the mayor of that Municipality, Ramón Banuchi, requested and secured the services of the plaintiff attorney who studied the case, answered the complaint and took part in all the proceedings before the District Court of Aguadilla, which court gave judgment for the defendant, and an appeal having been taken to the Supreme Court of Porto Rico, said attorney continued representing defendants until a final decision was rendered on May 20, 1925, which confirmed the said judgment.

"Fifth. Thereafter attorney Manuel Tous Soto, on behalf of the defendants and for their benefit, filed in the district court a memorandum of costs and disbursements which was opposed by John Nuveen Company, and submitted for determination after hearing and argument thereon before the court, which by an order of July 18, 1926, now definitive and enforceable by execution, fixed at FIVE THOUSAND AND TWENTY DOLLARS ($5,020) the costs and disbursements to be paid by the plaintiff, which was then, and continues to be, a juridical entity of the State of Illinois, domiciled in Chicago, devoted to the banking business and solvent.

"Sixth. By reason of the facts above shown and his participation in the suit, the defendant was compelled to devote a great deal of his time to the study of the legal questions involved in the litigation as well as of the documents connected with the bids, which had been attacked on the ground of nullity; to make trips to Isabela and to Aguadilla; and to appear several times before the District Court of

Aguadilla and the Supreme Court of Porto Rico, thereby earning professional fees, which he has valued at FIVE THOUSAND DOLLARS ($5,000), as a fair, just and reasonable compensation for his services, which amount the Municipality of Isabela has not paid, either in whole or in part, to the plaintiff notwithstanding the demands he has made therefor upon that Municipality.''

In its answer the defendant admitted the third averment of the complaint above transcribed, and denied the fourth ''because the said municipality had not engaged the services of the plaintiff attorney in the present case but only accepted them.'' The fifth averment was admitted, and the sixth was denied.

As new matter of defense, the defendant alleged the following:

''*First*. The Municipality of Isabela, for the purpose of negotiating the loan, which is the subject matter of the action prosecuted by John Nuveen Company and referred to in the third averment of the complaint, made the following contract with Alejandro Laborde Quintero:

''CONTRACT: The Municipality of Isabela, Porto Rico, represented by its Municipal Commissioner of Public Works, Police and Prisons, Ramón Banuchi, as party of the first part, and Alejandro Laborde in his own right, as party of the second part, appear herein and state that they have entered into the following contract:

'' '1. The aforesaid Alejandro Laborde hereby undertakes to negotiate a certain loan amounting to ONE HUNDRED THOUSAND DOLLARS ($100,000), authorized by the Municipal Assembly of the said Municipality by an ordinance of February 11, 1924, until such loan is obtained and the proceeds thereof delivered to the Municipality. The said Alejandro Laborde, as a part of the negotiation of such loan, undertakes to furnish to the said municipality the following services and things, as the same may be needed in the negotiation of the said loan:

'' 'Translations.

'' 'Advertising in Porto Rico.

'' 'Advertising in New York.

'' 'Services of counsel to pass upon the legality of the bonds in New York.

" 'Services of counsel in case of suit challenging the validity of the loan in P. R.

" 'Printing of bonds.

" 'Insurance, cashing and exchange of bonds.

" 'Cablegrams and expenses for transportation, maintenance and lodging of the municipal officers, or any other service or thing connected with the said loan.

" '2. As compensation for the services and expenses above mentioned, which the said Alejandro Laborde undertakes to furnish, the Municipality of Isabela, Porto Rico, hereby binds itself to pay to the said Laborde the sum of FIVE THOUSAND DOLLARS ($5,000).

" 'The above compensation shall be paid to the said Alejandro Laborde by the Municipal Commissioner of Public Works, Police and Prisons of the aforesaid municipality, or by any other appropriate officers thereof, once the loan shall have been contracted and the proceeds thereof shall have been delivered to the Municipality.

" 'IN WITNESS WHEREOF, we sign . . . . .'

"*Second.* The plaintiff had knowledge of the aforesaid contract at the time he rendered his services to the defendant Municipality of Isabela.''

The issue having thus been joined, the case went to trial. All the evidence introduced consisted of the testimony of the plaintiff and a deposition of Alejandro Laborde, given in plaintiff's behalf. The defendant confined itself to examining the plaintiff as a witness.

We know the contract entered into between the Municipality of Isabela and Laborde by virtue whereof Laborde, in consideration of $5,000, undertook to negotiate a certain loan until final close of the negotiation and delivery of its loan proceeds to the municipality, further binding himself to furnish services of counsel in case of judicial challenge of the loan in Porto Rico.

At the trial the plaintiff testified in his own behalf, partly as follows:

"I met Mr. Ramón Banuchi about the end of 1924. At that time he was Mayor of Isabela. He was introduced to me at the 'El Mundo' building by Mr. Alejandro Laborde Quintero, who informed me in the presence of Mr. Banuchi that the corporation John Nuveen

Company, of Chicago, represented by attorney Mario Figueroa del Rosario, had brought certiorari proceedings in the District Court of Aguadilla against the Board of Award and the Municipal Assembly of Isabela, to review the proceedings had in connection with the public sale of bonds of the Municipality of Isabela, amounting to one hundred thousand dollars, which had been issued in pursuance of an ordinance duly approved by the Municipal Assembly of Isabela and the Executive Council of Porto Rico. Mr. Alejandro Laborde then withdrew, and Mr. Ramón Banuchi and I remained in conference. Mr. Banuchi showed me the certiorari petition and the notice thereof. I read the petition and concluded that it was necessary to study all the proceedings had. I told him that I needed all pertinent documents and that I would for that purpose go to Isabela in order to study them. We said nothing at all about fees. He left the case in my charge and a few days later I journeyed from San Juan to Isabela. I was shown by Mr. Banuchi and the municipal employees under him all the original documents. I then studied some of these, requested copies of others and proceeded to consider whether really the bid submitted by the Silverman Company of Chicago, which was the successful bidder for the bonds, was to be preferred, considering the interests of the municipality, to the proposal submitted by John Nuveen Company, whose bid had been rejected and which had instituted the certiorari proceedings on the ground that its bid was more advantageous to the Municipality of Isabela than the bid submitted by the Silverman firm. I returned to San Juan and continued my study of the case. In order to answer the certiorari proceedings and to prepare my argument thereon, I had to study the entire Municipal Law together with the special law relating to municipal loans and all the documents appertaining to the negotiations for the municipal loan; and then I drew the pleading. I went to Aguadilla. I do not remember well why a second hearing was held; an agreement was reached as to the essential facts in the case; the decision was withheld pending the filing of briefs by both parties; I submitted our brief; then, at the request of Judge Bryan of the District Court of Aguadilla, I had a conference with him regarding the legal questions involved. Thereafter the case was decided in favor of the Municipality of Isabela; the Silverman firm took an appeal; I continued the defense of the case before the Supreme Court of Porto Rico. I obtained an affirmance of the judgment in the Supreme Court of Porto Rico, and then, jurisdiction having been re-acquired by the District Court of Aguadilla, I filed therein on behalf of the mayor a memoran-

dum of costs, including the expenses incurred in the proceedings and the attorney's fees. A hearing was held on the memorandum, and finally the District Court of Aguadilla approved the memorandum, awarding the expenses incurred by the municipality and fixing at five thousand dollars the amount of attorney's fees allowed in favor of the municipality. Thereafter I suggested the advisability of collecting the memorandum of costs, but payment thereof has not been secured owing to the attitude of the Municipal Assembly of Isabela, which refuses to approve any proposal coming from the mayor, no matter how advantageous it might be to the interests of the municipality. No sooner the mayor commissions an attorney to represent the municipality in any matter, than the Municipal Assembly disapproves the action of the mayor.

"       *       *       *       *       *       *       *

"Defendant.—Q. Did you state that nothing was said as to attorney's fees? A.—No. Q.—I wish you would explain exactly the meaning of those words. A.—That neither Mr. Banuchi nor myself said anything as to my fees; that I accepted the case as most of the cases are accepted—the attorney takes up the case and the only agreement he makes with the client is that he will prosecute the matter, will study it and will do his duty. Q.—Nothing was said as to who would pay the fee nor as to the amount thereof? A.—Exactly. We said nothing at all as to reward or compensation for the work."

In his deposition Laborde says in part:

Mr. Tous Soto: Were you concerned at all with that certiorari? Witness.—No. The mayor simply asked me to give him the name of an attorney who might take up his case and I mentioned to him the said attorney Mr. Tous Soto.

"       *       *       *       *       *       *       *

"Mr. Tous Soto: Do you know whether Mr. Banuchi and Mr. Tous Soto knew each other prior to that incident? Witness.—I took Mr. Banuchi into Mr. Tous Soto's office, which was next to mine in the "El Mundo" building. Mr. Tous Soto.—Did the conference between Mr. Banuchi and Mr. Tous Soto take place in your presence or privately? Witness.—Privately, because I was very busy that day and the only thing I did was to introduce him. Mr. Tous Soto. —Did Mr. Banuchi inform you that the services of Mr. Tous Soto were to be paid by you? Witness.—No; he could not advise me that because our contract was clear and conclusive. Moreover, he asked me how much would the fees amount to and I answered him that I

was entirely unable to estimate such fees, because cases of that sort require a lot of work, and especially the present case, which was appealed also to the Supreme Court.

"   *        *        *        *        *        *        *

"Mr. O'Neill.—You stated that you introduced the Mayor of Isabela to Mr. Tous Soto? Witness.—Yes. Mr. O'Neill.—What did you tell him? Witness.—I introduced the mayor and told Mr. Tous Soto that he had a case and was looking for an attorney. Mr. O'Neill. —And what did Mr. Banuchi tell you? Witness.—That a suit had been filed against the Board of Award, wherein it was alleged that the contract for the loan should have been awarded to the plaintiff because its bid was lower than the one accepted. Mr. O'Neill.— Bid for what? Witness.—Bid for the loan. Mr. O'Neill.—In your opinion, what made the Mayor of Isabela consult with you as he did? Witness.—The Mayor of Isabela was also president of the Board of Award and it was he who took the initiative under the latter's ordinance. Mr. O'Neill.—And what were you? Witness.—I was commissioned to negotiate the loan and he asked my advice as an expert on the matter of loans, as to whether the suit was justified and whether the allegation of Nuveen that its bid was the most advantageous was true; we then made the calculations and I showed him that it was not so. Mr. O'Neill.—Did the mayor tell you that the witness was bound to defend the suit? Witness.—No, not at all. He could not tell me that. Mr. O'Neill.—Are you sure? Witness.—Quite sure."

In my opinion the contract between the municipality and Laborde is susceptible of the construction urged by the municipality. Laborde undertook to act until the bonds were received by the municipality, and to furnish legal services in case the loan was challenged. According to his own deposition, it was Laborde who showed to the mayor, by the calculations they made, that the Nuveen proposal was not the most advantageous, and the mayor, as president of the Board of Award, acted accordingly. It was Laborde who took the mayor to the law office of the plaintiff and the mayor then entrusted the case to the plaintiff without any mention being made as to fees.

But it must be acknowledged that the contract admits also the restrictive interpretation given to it by the district court and, as the mayor failed to testify at the hearing, I do not

feel justified in going so far as to say that no showing has been made of the existence of a contract for professional services between the plaintiff and the defendant. Hence, I concur with the first part of the majority opinion, delivered by Mr. Justice Texidor.

I can not agree, however, to the allowance of five thousand dollars for the services rendered.

The plaintiff did not put in evidence in the district court the record of the certiorari proceedings, so as to give that court an opportunity to form an estimate of his work. He confined himself to testifying. The burden of proof was on him. The sixth averment of the complaint had been denied.

The lower court apparently concluded that for the purposes of the present case, no further proof was required than a showing of what transpired in the proceedings had in the District Court of Aguadilla with reference to the memorandum of costs, filed in the certiorari proceeding. The court says in its opinion:

"What effect is to be given to the award made by the District Court of Aguadilla? We regard it equally conclusive between the Municipality of Isabela and its counsel, as between the said municipality and John Nuveen Company. It is final and unimpeachable. By virtue of it a claim for a certain sum has been recognized in favor of the Municipality of Isabela, without any possibility of further challenge by the debtor. The Municipality of Isabela can not enrich itself with the labor of its attorney. The allowance of that FIVE THOUSAND ($5,000) DOLLARS for the work of its attorney implies, for the Municipality of Isabela, an admission that that sum, and no other, is the reasonable value of the services of its attorney, and the consequent obligation to compensate the same."

In my opinion the conclusions set forth in the paragraph above quoted are erroneous.

We know from the very testimony of the plaintiff how the memorandum was filed, and we also know from him that the sums allowed have not been collected.

Mention is made of the fact that proceedings were brought by John Nuveen Company to annul the award of the loan

contract, but nothing is known as to the grounds of such proceedings. The District Court of San Juan did not even have before it the record relating to the memorandum of costs. In a case of such importance, wherein so much stress is laid upon the decision of the District Court of Aguadilla, that decision should have been studied more closely.

It is true that this Supreme Court has held (*Castro v. Société Anonyme des Sucreries*, 34 P.R.R. 546, 552) that it is "the value of the services" what should govern the court in estimating the amount of attorney's fees to be paid by the defeated party; but that ruling followed the statement that "it is the party and not his attorney who has a right to receive the attorney's fees."

This is a separate action in which it is incumbent upon the plaintiff to prove his case, not by what the District Court of Aguadilla might have decided at his instance, but by a showing of what his services are really worth. The District Court of San Juan was not bound to follow the estimate of the Aguadilla court. It could and should have proceeded on its own initiative, fixing the amount it deemed reasonable as compensation for the services rendered.

The above point having been sufficiently discussed, let us take up the evidence. What does it show?

A simple certiorari case, in which, as repeatedly stated by the plaintiff himself, no attack was directed against the loan negotiations, the ordinance, or any proceedings, nor was there any question of law involved after acknowledging the validity of the bid which had been accepted as the most advantageous, the only objection being that the petitioner's bid was alleged to be more advantageous to the municipality. Such being the case, what else could be argued before the court except the reasons which the Board of Award had for making the award?

Under the facts and the circumstances of this case, it seems to me a great injustice to compel a small municipality

of this Island to pay the *five thousand dollars* compensation claimed herein.

The argument that the municipality should not enrich itself with the labor of its attorney has no force and may be overcome, as can be readily demonstrated. To obtain from a court, as here, an order directing an Illinois corporation to pay five thousand dollars as attorney's fees, is something far removed from the actual receipt of that sum.

In my opinion the following would be a fair determination of this case:

The judgment appealed from should be modified so as to adjudge the defendant municipality to assign to the plaintiff all its rights and interests in the recovery of the sum which the District Court of Aguadilla directed John Nuveen Company to pay to the Municipality of Isabela as attorney's fees, awarded in the certiorari proceedings; or to pay to the plaintiff an amount equal to any liquidated sum that the municipality may have received on that account, and should the plaintiff not acquiesce in this, that the municipality then pay to him the sum of five hundred dollars which, in view of the evidence introduced, is in my opinion the reasonable value of his work.